Lauren M. Rule (OSB #015174)
Elizabeth H. Zultoski (OSB #105482)
ADVOCATES FOR THE WEST
3115 NE Sandy Blvd., Ste. 223
Portland, OR 97232
(503) 914-6388
lrule@advocateswest.org
ezultoski@advocateswest.org

David H. Becker (OSB # 081507)
Law Office of David H. Becker, LLC
833 SE Main Street, #302
Portland, OR 97214
(503) 388-9160
davebeckerlaw@gmail.com

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| **OREGON WILD**, **FRIENDS OF LIVING OREGON WATERS**, and **WESTERN WATERSHEDS PROJECT**,<br><br>     Plaintiffs,<br><br>  v.<br><br>**CONSTANCE CUMMINS,** Forest Supervisor, Fremont-Winema National Forests, **U.S. FOREST SERVICE,** a federal agency, **LAURIE R. SADA**, Field Supervisor, Klamath Falls Office, **U.S. FISH & WILDLIFE SERVICE**, a federal agency,<br><br>     Defendants,<br><br>**ED GARRETT RANCH, INC**., an Oregon Corporation, **PHILIP GROHS**, dba Grohs Ranch, **MATT OWENS**, an individual, **ADAM OWENS**, an individual, **KNESS CATTLE, INC**., and Oregon Corporation, **CAIN RANCH LLC**, an Oregon Limited Liability Company, **STEVE SIMMONS**, an individual, **HOLIDAY RANCHES, INC**., a California Corporation, and **C&A VOGT COMMUNITY PROPERTY TRUST**, a California Trust,<br><br>     Defendant-Intervenors. | CASE NO. 1:15-cv-1360-CL<br><br>**DECLARATION OF DOUG HEIKEN IN SUPPORT OF PLAINTIFFS' OBJECTIONS TO BILL OF COSTS** |

I, Doug Heiken, declare:

1. I am the Conservation and Restoration Coordinator for Oregon Wild and reside in Eugene, Oregon. I began volunteering with the organization in 1990 and joined the staff in 1995. The following matters are personally known to me, and if called as a witness I would and could truthfully testify thereto.

2. Oregon Wild (formerly Oregon Natural Resources Council) is a statewide 501(c)(3) non-profit, tax-exempt, public interest organization that was founded in 1974 and represents over 20,000 members and supporters from all across the state. Oregon Wild's mission is to protect and restore our state's wildlands, wildlife, and water as an enduring legacy. To carry out this mission, we engage in a variety of activities including hikes and outdoor education, scientific monitoring and analysis, citizen enforcement of state and federal environmental laws, and political advocacy. Some our of recent successes and work include passing federal legislation to protect 127,000 acres of wilderness and 83 miles of wild and scenic rivers in Oregon, securing permanent protections for Waldo Lake from motorized uses, and advocating for protection of the Klamath Basin National Wildlife Refuge and surrounding areas and imperiled fish and wildlife.

3. As part of its mission, Oregon Wild reviews federal land management decisions such as livestock grazing authorizations, endangered species act consultations, and timber sales. The organization gets involved in public processes and advocacy efforts surrounding such decisions to ensure the agencies are using the best available science in making management decisions, complying with environmental laws, and upholding the public interest by adequately protecting natural resources and recreation on public land. We get involved to protect public benefits that flow from public lands and ensure that federal agencies do not elevate private

DECLARATION OF DOUG HEIKEN IN SUPPORT OF PLAINTIFFS' OBJECTIONS TO     1
BILL OF COSTS

interests above public interests.  When Oregon Wild has significant concerns about agency decisions that we cannot successfully address through public participation processes or collaborative efforts, the organization occasionally seeks redress through the federal courts.  We take litigation very seriously because we know that our organization, the agencies, and the courts have limited time and resources.  Indeed, our staff members focus on educational, policy, non-litigation advocacy, and other organizational activities and we do not have a staff attorney who can bring litigation on our behalf.

4. While we prefer to collaborate and avoid litigation to resolve our concerns, we use federal courts as a last resort to protect our interests and those of our members and the public. For example, Oregon Wild (when it was known as the Oregon Natural Resources Council) was involved in the lawsuit against Fish and Wildlife Service for failing to list the spotted owl as endangered under the Endangered Species Act ("ESA") due to political pressures, which has ultimately resulted in sweeping protections for the species and its habitat in the Northwest.  I helped with another Oregon Wild lawsuit that caused government agencies such as the Forest Service to survey for and protect rare species prior to authorizing logging on public lands.

5. Unfortunately, in spite of unambiguous legal requirements to conserve wildlife, the federal land management agencies are under great pressure to produce commodities from public lands, so federal litigation is often the only avenue our organization has to remedy its concerns about federal agencies' ESA consultations.  Unlike other federal environmental statutes, the ESA does not provide public involvement opportunities and does not require agencies to solicit public comment on consultations.  As a result, the organization may not learn of a consultation until it is finalized.  At that point, if the organization is concerned about a

consultation's scientific analyses or allowance for harm of the species at issue, we can either challenge the consultation in court or allow the flawed consultation to govern an agency action, which can last for years or have long-lasting effects.

6.  In this case, Oregon Wild challenged the ESA consultation and other agency decisions to allow livestock grazing on public lands due to serious concerns about the effects that those decisions would have on the critically endangered suckerfish and its critical habitat in the Lost River basin.  We brought this litigation in good faith due to these concerns.

7.  To the best of my knowledge, prior to filing the complaint in this lawsuit, Oregon Wild had not been required to pay cost bills in the course of litigation. Shortly after this lawsuit was filed, Judge Panner assessed a cost bill of $1,259.73 against us in a timber sale case, *Oregon Wild v. U.S. Forest Serv.*, No. 14-981-PA.  Approximately a year later, Judge Panner assessed a cost bill that was several times larger, $5,291.00, against us in another timber sale case, *Klamath-Siskiyou Wildlands Center v. Gerritsma*, No. 12-1166-PA.  These costs bills were a shock to our organization because we have been litigating for decades and do not recall other instances where the federal government sought to extract the costs associated with the production of administrative records in these types of cases.  As an organization, we are gravely concerned with the federal government's abrupt decision to seek significant cost bills against environmental plaintiffs who do not prevail.

8.  One of our overarching concerns with the imposition of these cost bills is their unpredictability, inconsistency, and wide variability.  The second cost bill that was assessed against us was more than four times larger than in the first case, even though both were challenges to timber sales that were based on the administrative record.  We understand other judges in the District of Oregon have denied cost bills for administrative records in full while

still others have reduced bills based on unrecoverable administrative record costs sought by the government. We have also heard that in other jurisdictions, the government has sought and been awarded cost bills that have reached into the tens of thousands of dollars. This makes it virtually impossible to accurately assess or plan for costs when deciding to bring litigation. We respectfully believe it is unfair for our organization to be subjected to such wildly divergent costs due to the specific desires of a particular agency, ranger district, or attorney involved in the case and the particular judge who is assigned to a matter.

9. We also find it troubling that the government seeks to tax environmental groups for production of these records even though the agencies are legally mandated to prepare them for every decision they make and are required to produce, and often do produce, these records free of cost under the Freedom of Information Act ("FOIA") to organizations like ours. Oregon Wild regularly seeks and is granted fee waivers for public records typically included in the administrative record of projects like this. Further, imposing costs of several hundred to several thousand dollars on small non-profit groups like Oregon Wild represents a substantial fraction of our discretionary budget, but this same cost represents only a miniscule fraction of the federal budget. We respectfully assert it is more fair and equitable for the government to assume this cost in the uncommon instances where organizations seek to protect the public interest through citizen enforcement, as Congress intended through the ESA and the Administrative Procedure Act, but do not ultimately prevail. Where organizations bring truly frivolous lawsuits, which this was not, the court has other methods of sanctioning such misdeeds.

10. As a result, these cost bills are having a severe chilling effect on our organization, which is a small non-profit with a limited budget that is primarily devoted to non-discretionary items such as staff salaries. When considering whether to challenge agency decisions, we now

DECLARATION OF DOUG HEIKEN IN SUPPORT OF PLAINTIFFS' OBJECTIONS TO    4
BILL OF COSTS

must consider the risk of cost awards, but have no way of accurately assessing that risk given the huge disparities in potential outcomes. We also worry that cost bills could become more prevalent or significantly larger under different administrations or if different federal employees are involved. In particular, we fear that additional court decisions awarding costs for the production of the administrative record will further embolden the government to seek additional costs from non-profit organizations in future cases.

11. Oregon Wild, like our co-plaintiffs and many others, plays an important role in fulfilling Congress's policies underlying our bedrock environmental laws, which include allowing citizens to hold agencies accountable for violating those laws. Our limited resources already prevent us from pursuing potential litigation that would protect natural resources and prevent federal agencies from elevating private interests above public ones. The sudden and increasing onslaught of costs bills will make Oregon Wild think twice about fulfilling our citizen enforcement role. If organizations like ours are less likely to engage in such advocacy to prevent the government from skirting its duties under federal environmental laws, I worry that public treasures in Oregon will suffer as decisions of federal agencies are subjected to less scrutiny.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 4th day of April, 2017, in Eugene, Oregon

*Doug Heiken*

_____

Doug Heiken

DECLARATION OF DOUG HEIKEN IN SUPPORT OF PLAINTIFFS' OBJECTIONS TO   5
BILL OF COSTS